IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CHRISTINA DEVORE, | ) | |
|         Plaintiff, | ) | |
| | ) | |
| V. | ) | NO. 7:07-CV-0138-BF (R) |
| | ) | |
| COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
|         Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The parties consented to have the United States Magistrate Judge conduct the proceedings in this case, and the District Court transferred this case to the United States Magistrate Judge. Plaintiff Christina Devore ("Plaintiff") brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under title XVI of the Act. For the reasons that follow, the decision is AFFIRMED.

**I**.

Plaintiff was born on December 19, 1974 and applied for SSI benefits under title XVI on February 18, 2005, contending that she had been unable to engage in substantial gainful activity since May 17, 2000.[1] She completed a seventh or eighth grade education, at least one year of which was in special education. (Tr. 75, 222, 410-11.) She asserted that she suffered from thyroid problems, depression, and borderline personality disorder. The Commissioner denied her

---

[1] Plaintiff filed for disability insurance benefits on March 3, 2005. (Tr. 53-54.) She did not pursue that claim beyond the initial determination because she did not have insured status at any relevant point in time.

application after a hearing before an Administrative Law Judge ("ALJ").[2] Plaintiff sought review by the Appeals Council, which denied her request. The ALJ's decision thus became the Commissioner's final decision. Plaintiff brings this action for judicial review of that ruling.

**II**.

The court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted). "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). It is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

To determine whether a claimant is disabled, the Commissioner uses a five-step sequential

---

[2] Although the ALJ concluded that Plaintiff is disabled, he also found that there is medical evidence of a substance use disorder which is a contributing factor material to the determination of disability and denied Plaintiff benefits. (Tr. 13.)

inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett,* 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (1998). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). To establish disability, the record must show that the limitations imposed by plaintiff's conditions prevent her from engaging in any substantial gainful activity. *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

On appeal, this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the

claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557.

### III.

Effective March 29, 1996, drug addiction or alcoholism was removed as a basis for awarding disability benefits under SSI. 42 U.S.C. § 1382c(a)(3)(e). The Act now provides that a claimant "shall not be considered to be disabled . . . if alcohol or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The implementing regulation for 42 U.S.C. § 423(d)(2)(C) is located at 20 C.F.R. § 416.935 and provides that:

> If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

20 C.F.R. § 416.935(a). The regulation also provides the process to be used by the Commissioner in making this determination:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we have based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>> (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

4

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of a disability.

20 C.F.R. § 416.935(b). The key inquiry is whether the Commissioner "would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). Under Fifth Circuit law, the claimant has the burden to prove that his substance dependancy is not a contributing factor material to his disability. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).[3] However, the Commissioner follows the regulations which place the burden of proof on the Commissioner to determine whether a claimant's drug addiction or alcoholism is a factor material to the determination of disability. 20 C.F.R. §416.935.

## IV.

Most of Plaintiff's medical evidence was from a period before February 18, 2005, the onset date for SSI purposes. Therefore, the ALJ considered Plaintiff's complete medical history and took a "longitudinal view to evaluation." (Tr. 14.)

On May 19, 2000, Plaintiff overdosed on Tylenol No. III, and was admitted to North Texas State Hospital. (Tr. 113, 133-128.) Plaintiff's urine drug screen was positive for amphetamines. (Tr. 133.) Plaintiff reported hallucinations, and the doctor attributed them to the use of stimulants and other drugs. (Tr. 134.) Plaintiff obtained antidepressants from her mother and used cocaine "when she [had] the money," about once a month. (Tr. 135.) She had used cocaine about one week before her admission to the hospital, and usually used amphetamines interchangeably with cocaine.

---

[3] The regulations provide that SSI benefits are not payable prior to the date of application, regardless of how far back disability may be alleged or found to extend. See 20 C.F.R. § 416.335. Nevertheless, the ALJ may consider the claimant's complete medical history consistent with 20 C.F.R. 416.912(d).

5

(*Id*.)  The doctor attributed Plaintiff's overdose experience to her stimulant use and possibly withdrawal from it.  (Tr. 137.)  His diagnosis was substance-induced mood disorder and polysubstance dependence.  (Tr. 136.)

Social workers and doctors reported Plaintiff's methamphetamine, marijuana, and substance abuse in reports from May 26, 2000 through June 15, 2000, at which time Plaintiff was diagnosed with amphetamine dependence and cannabis dependence.  (Tr. 114-5, 118-19, 126-27.)

Hector R. Decena, M.D. ("Dr. Decena") administered a mental status examination on August 10, 2000, and diagnosed Plaintiff with amphetamine dependence and cannabis dependence and stated that her "bipolar disorder was co-morbid with amphetamine dependence." (Tr. 151.)  Dr. Decena stopped treating Plaintiff with prescriptions because she continued to use "street drugs." (*Id*.)

On October 29, 2003, Plaintiff told Richard E. Eckert, Ph. D. ("Dr. Eckert"), that she had used amphetamines months earlier but did not currently use them. (Tr. 402.)  Dr. Eckert determined Plaintiff's global assessment of functioning ("GAF") at 75, which indicated no more than a slight impairment in social, occupational, or school functioning.[4]  (Tr. 403.)

In an assessment at Helen Farabee Regional MHMR Center on January 16, 2004, by Andrew Martin, M.A., LPCI, Plaintiff was diagnosed as "no longer [meeting] the criteria for bipolar disorder due to lack of symptoms needed for depression."  (Tr. 158.)  Martin concluded that Plaintiff's psychosis was related to her drug use. (*Id*.)  She reported that she stopped taking methamphetamine

---

[4] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.2000) ("DSM-IV-TR") at 32.

6

three weeks earlier, but that before that time, she had taken them daily for five years. (Tr. 161A.)

From February 3, 2004 through January 4, 2005, Janice D. Piper, M.A., LPC, counseled Plaintiff. (Tr. 291-323.) In February 2004, Plaintiff reported that she had been to jail in June for forgery and that she was on probation. She stated that "she doesn't drink and denies using drugs." (Tr. 293.) She was assessed with antisocial disorder, for which weekly counseling and psychological testing from Dr. Eckert was recommended.

A psychiatric examination was conducted by Wassel A. Lewis, Ph.D., M.D., ("Dr. Lewis") on April 9, 2005. (Tr. 220-224.) Dr. Lewis reported that Plaintiff stated: "she used alcohol every other weekend. She added that she would [drink] several mixed drinks but never to the point of intoxication. She last used alcohol this past Easter when she consumed a half a glass of a mixed drink." (Tr. 221.) She denied she ever had a problem handling alcohol, admitted to using marijuana in junior high school but never daily nor weekly, and last used marijuana several years before. (Tr. 222.)

In April 2005, a State agency physician ("SAMC") reviewed the medical reports concerning Plaintiff's alleged physical limitations of an enlarged thyroid and a heart condition. The agency physician found that the alleged limitations were "not wholly supported by objective evidence of record." (Tr. 226.) A SAMC and a State agency psychologist assessed Plaintiff's mental conditions from the medical records on April 26, 2005. (Tr. 227-244.) They found evidence of "affective disorders, anxiety related disorders, personality disorders, and [a history of] substance abuse disorders." (Tr. 231.) The doctors reported mild to moderate functional limitations and found that Plaintiff could understand and carry out detailed non-complex tasks; make simple work-related decisions' and interact with others and adapt to routine changes in a work setting. (Tr. 227-29.)

7

On May 11, 2005, Adam S. Butera, M.D. ("Dr. Butera") gave Plaintiff a psychological examination. (Tr. 245-247.) Plaintiff told Dr. Butera that she had not used drugs for two years because she had attended a prison drug treatment program. (*Id.*)

On June 8, 2005, Plaintiff went to the hospital with breathing problems and said she smoked marijuana. (Tr. 248, 332.) On January 17, 2006, under "Social History," the emergency room doctor noted that Plaintiff uses alcohol and tobacco.

The ALJ found that Plaintiff has not engaged in substantial gainful activity since February 18, 2005, and has severe impairments of a depressive disorder, an attention deficit disorder, antisocial personality traits, and a substance abuse disorder. (Tr. 13.) The ALJ also found that Plaintiff had been successfully treated for Grave's disease with hypothyroidism. (*Id.*) In combination, the severe impairments limited Plaintiff's ability to perform basic work activities. (*Id.*) The ALJ evaluated the medical evidence as a whole from a "longitudinal view" and found that Plaintiff was able to perform the full range of exertional activities. (Tr. 13-14, 17.) The ALJ's evaluation of Plaintiff's mental problems led him to conclude that Plaintiff was unable to: (1) get along with coworkers; (2) complete a workday without interruptions from psychologically-based symptoms; (3) perform at a consistent pace without an unreasonable number of rest periods; (4) relate and interact appropriately with peers and coworkers; or (5) perform tasks that required teamwork or cooperation with others. (Tr. 17.) The ALJ considered Plaintiff's age, education-level, and the fact that transferability of job skills was not an issue. (Tr. 18.) The ALJ concluded that Plaintiff could not perform her past relevant work or other jobs that existed in significant numbers in the national economy if her substance abuse was considered, and he concluded that she was disabled. (Tr. 18-19.)

8

Applying the second part of the required procedure, the ALJ determined the extent to which (if any) Plaintiff would be limited in her ability to work if she stopped using drugs and alcohol. (Tr. 21-22). The ALJ concluded that although Plaintiff would continue to experience impairments affecting her ability to perform basic work activities, if she stopped her substance abuse, she would have no exertional limitations and would be able to perform routine, repetitive, low-stress work; and, further, her ability to perform such work would be limited only to the extent that she would need to work in relative isolation with limited contact with peers and supervisors. (Tr. 19.) The ALJ then determined that if Plaintiff stopped her substance abuse, she could perform a significant number of jobs in the national economy, such as press machine operator (approximately 780 jobs in the state of Texas and approximately 73,900 jobs in the national economy); bench assembler (approximately 1,750 jobs in the state of Texas and approximately 865,000 jobs in the national economy); and touch up screener (approximately 34,000 jobs in the state of Texas and approximately 645,000 jobs in the national economy). (Tr. 22.) The ALJ decided that absent substance abuse, Plaintiff would not be disabled because her substance use disorder is a contributing factor material to the determination of disability. (*Id.*) Thus the ALJ held that Plaintiff was not disabled within the meaning of the Act at any time relevant to the decision. (*Id.*)

## V.

Plaintiff claims that the ALJ considered unfavorable pre-onset evidence, but failed to consider favorable pre-onset evidence, and therefore picked and chose only pre-onset evidence unfavorable to Plaintiff in violation of *Loza v. Apfel*, 219 F.3d 378, 393-94 (5th Cir. 2000). (Pl.'s Br. 12.) Plaintiff relies on the ALJ's failure to mention a negative drug screen dated December 8, 2004 (Tr. 372, 374) less than three months before the period at issue and his mistake in noting that

state agency medical consultants stated that Plaintiff had a substance abuse disorder, rather than a "history" of substance addiction disorder. (Tr. 231, 239.) Additionally, Plaintiff argues that the ALJ's brief discussion of Janice Piper's counseling notes for February 2004 through January 2005 does not convey Piper's opinions that Plaintiff was not engaging in substance abuse. (Pl.'s Br. 12.) Finally, Plaintiff states that the ALJ should have found, based on Plaintiff's testimony at the hearing, that she did not have a problem with substance abuse and therefore, her substance abuse is not a contributing factor to disability. (Tr. 12-13.)

The Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d at 634. The ALJ has the responsibility to determine the claimant's residual functional capacity at the administrative hearing based on all of the evidence, including the medical records, observations of treating physicians and other acceptable medical sources, and the claimant's own description of her limitations. *Anderson v. Shalala*, 51 F.3d at 779. The ALJ must resolve conflicts in the evidence and make credibility determinations based on substantial evidence. *Lovelace v. Bowen*, 813 F.2d 55, 59-60 (5th Cir. 1987); *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981) (per curiam). The proper inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza*, 219 F.3d at 393. To make a finding of "no substantial evidence," the court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The

resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

Plaintiff relies upon *Loza*, in which the ALJ committed reversible error by rejecting the medical opinion of a treating physician without consideration and an explanation for not according it considerable weight. *See Loza*, 219 F.3d at 395. This case does not involve an ALJ's failure to consider the opinion of a treating physician. Further, the Fifth Circuit Court of Appeals has rejected a rigid approach in which an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected. *See Falco v. Shalala*, 27 F.3d 160, 163 ( 5th Cir. 1994). The Court noted that in *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988), it had explained that "when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain." *Falco*, 27 F.3d at 163. The ALJ is not bound to follow formalistic rules. *Id*. In this case, the ALJ's failure to mention the one clean pre-onset drug screen (gathered when Plaintiff went to the emergency room for a "possible goiter") and to more fully discuss the counselor's opinion that Plaintiff was sober during the time she was being counseled to try to regain custody of her twins does not compromise the fairness or accuracy of the Commissioner's decision. Similarly, the SAMC's report was based upon a review of all the medical evidence, and the ALJ's summation of the SAMC's report without noting a "history" of substance abuse is not a prejudicial error that would warrant reversal. The ALJ's articulation of the medical evidence complies with the regulations that he was required to follow.

Plaintiff contends that the only direct evidence relative to alcohol and marijuana use consists of: (a) Plaintiff's testimony that she had not used alcohol or drugs for two or three years; (b) her statements to Dr. Lewis on April 9, 2005 that she had "last used alcohol this past Easter [March 27,

11

2005] when she consumed a half a glass of mixed drink," (Tr. 221) and (c) her statement to Dr. Caras on June 8, 2005 that "she admits to smoking marijuana" (Tr. 248). (Pl.'s Br. 12.) According to Plaintiff, because of the lack of direct evidence of continuing substance abuse, the ALJ erred by concluding that Plaintiff's drug addiction or alcoholism is a contributing factor to Plaintiff's disability. After viewing Plaintiff first-hand at the hearing, the ALJ found the medical evidence more persuasive than Plaintiff's attestations, a determination that he was entitled to make.

The ALJ concluded that Plaintiff's substance abuse disorder was a severe impairment which, in combination with her other severe mental impairments, prevented Plaintiff from performing her past relevant work. (Tr. 13.) However, when the ALJ considered Plaintiff's other severe mental impairments without the substance abuse, he found that jobs existed in the national and local economy that Plaintiff could perform, and she was not disabled. The terms of 20 C.F.R. § 416.935(b) required the ALJ to consider whether he "would still find [the claimant] disabled *if* [she] stopped using drugs." [Emphasis supplied].

The ALJ followed the regulations, and substantial evidence supports the decision. The ALJ noted that Plaintiff's later GAF scores "were more nearly consistent with the claimant's functioning without drug abuse." (Tr. 15.) The ALJ was entitled to consider Plaintiff's credibility as well as the information that Plaintiff provided. He noted:

> According to Plaintiff, her Grave's disease has been 'taken care of'; her impairments include depressive disorder, attention deficit disorder, and antisocial traits; her daily activities include caring for twins and her husband's children and doing housework. The claimant is a smoker. The claimant's allegations concerning the nature, intensity, frequency, duration, and limiting effects of her impairments have not been sufficiently credible to support a finding of disability without consideration of her substance abuse. (Tr. 20.)

The ALJ concluded that:

> Without substance abuse, the claimant would have fewer and less frequent problems with daily and social functioning. The duration, frequency, and intensity of her symptoms would subside, and in some cases, symptoms would stop entirely. The claimant would not experience the side effects resulting from drug and alcohol abuse. She would experience better results from prescribed medications, and she would have fewer complaints of functional limitations and adverse symptoms. (Tr. 21.)

Dr. Butera "recommend[ed] in the strongest possible language that [Plaintiff] abstain from all drugs of abuse and alcohol" and that she "attend daily AA/NA meetings and work the 12 steps with a sponsor." (Tr. 247.) Plaintiff "voiced understanding." (*Id.*) However, the record does not show that she attended AA/or NA as instructed. Plaintiff's depressive disorder was being treated with a prescription, Geodone. (*Id.*) The ALJ found that the medical reports for the period at issue do not reflect severe attention deficit disorder or severe bipolar disorder. Plaintiff was able to care for her twins, perform household tasks, and drive her children to school. The ALJ found that, absent substance abuse, Plaintiff's daily activities would not be significantly restricted and her social functioning would be no more than moderately limited. In determining Plaintiff's RFC, the ALJ took into account Plaintiff's anti-social traits and limited her to performing routine, repetitive, low-stress work in relative isolation, with limited contact with peers and supervisors. The Commissioner met his burden to show that Plaintiff's mental impairments, absent substance abuse, were not so disabling that she was unable to perform work that exists in significant numbers in the national and local economies. Plaintiff failed to rebut this finding. The ALJ's determination that Plaintiff's substance abuse was a contributing factor material to her disability is not based upon an incorrect legal standard or based upon a lack of substantial evidence.

**Conclusion**

Plaintiff failed to prove that the ALJ applied an incorrect legal standard. Additionally, Plaintiff failed to show that substantial evidence does not support the ALJ's finding that Plaintiff is not disabled within the meaning of the Social Security Act. The Commissioner's decision is **AFFIRMED.**

IT IS SO ORDERED this 4th day of June, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE